# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

| | | |
|---|---|---|
| SFG COMMERCIAL AIRCRAFT LEASING, INC. | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | NO. 3:09-CV-345 |
| PAS FLIGHT SYSTEMS, LLC, STEVEN J. PALAZOLLA, and MARVIN MITCHELL ANGE | ) ) ) ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This matter is before the Court on Motion for Summary Judgment, filed by plaintiff, SFG Commercial Aircraft Leasing, Inc., on March, 17 2010 (DE #14). For the reasons set forth below, the Motion for Summary Judgment (DE #14) is **GRANTED**. The Court **ORDERS** that judgment be entered in favor of plaintiff, SFG Commercial Aircraft Leasing, Inc., and against defendants, PAS Flight Systems, LLC, and Steven J. Palazzola, jointly and severally, in the amount of $786,002.66 plus interest at the daily rate of $121.10 from March 17, 2010, up to and including today. The Clerk is further **ORDERED** to close this case.

BACKGROUND

This case arises from a breach of contract involving a loan entered into on October 2, 2006. On August 3, 2009, plaintiff SFG Commercial Aircraft Leasing, Inc. ("SFG") brought suit alleging failure to pay according to the terms of the Loan and Security Agreement and Promissory Note by defendant PAS Flight Systems, LLC. ("PAS") and subsequent defaults of personal guarantees by defendants Steven J. Palazzola and Marvin Mitchell Ange (collectively "Defendants"). Defendants' Answer to the Complaint admits that PAS and Steven J. Palazzola failed to pay amounts due as required by the Loan and Security Agreement, Promissory Note, and personal Guaranty of Payment. (DE #9, pp. 5-6; Answer, ¶¶ 17, 23.)

SFG filed the instant motion on March 17, 2010. (DE #14.) Defendants filed several motions for extensions of time in order to file a response to SFG's motion for summary judgment; however, they failed to file a response within the required time frame. As such, on July 19, 2010, this Court ordered Defendants to file a written status report concerning the litigation. (DE #24.) The status report indicated that SFG and Defendant Marvin Mitchell Ange had reached a settlement. (DE #25.) The parties subsequently filed a voluntary Stipulation of Dismissal with Prejudice as to Defendant Marvin Mitchell Ange Only on July 27, 2010. (DE #26.)

After an Order to Show Cause (DE #27) was issued, the remaining Defendants advised the Court that they had no intention of filing a

response to SFG's Motion for Summary Judgment. Accordingly, this case will be ruled on summarily, without the benefit of a response from the remaining Defendants.

DISCUSSION

Summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. Summary judgment should be granted only if it is demonstrated that there is no genuine issue of material fact and that as a result, the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Lewis v. Downey*, 581 F.3d 467, 478 (7th Cir. 2009). The record must reveal that no reasonable jury could find for the nonmovants, otherwise, summary judgment is improper. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In deciding a motion for summary judgment, a court must view all facts in a light most favorable to the nonmoving party. *Id*. at 255; *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2009).

The burden is upon the moving party to identify those portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," if any, that the moving party believes demonstrate an absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets this burden, the nonmoving party must then go beyond the pleadings and set forth specific facts showing that there is a genuine issue of

material fact. Fed. R. Civ. P. 56(e); *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 694 (7th Cir. 2006); *Becker v. Tenenbaum-Hill Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990). "Whether a fact is material depends on the substantive law underlying a particular claim and 'only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.'" *Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir. 1988) (citing *Anderson*, 477 U.S. at 248).

A party who bears the burden of proof on a particular issue may not rest on its pleading, but must "affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact which requires trial." *Borello v. Allison*, 446 F.3d 742, 748 (7th Cir. 2006); *East-Miller v. Lake County Highway Dep't*, 421 F.3d 558, 561 (7th Cir. 2005). Therefore, if a party fails to establish the existence of an essential element on which the party bears the burden of proof at trial, summary judgment will be appropriate. There can be "'no genuine issue as to any material fact', since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

Facts

In determining what facts this Court should rely upon in ruling on the instant summary judgment motion, the Court considers the

requirements of Local Rule 56.1. This rule requires the party seeking summary judgment to include a statement of material facts in the memorandum accompanying his summary judgment motion with appropriate citations. N.D. Ind. L.R. 56.1(a). The rule also provides that the party responding to a motion for summary judgment must include a statement of genuine issues together with appropriate citations. N.D. Ind. L.R. 56.1(b). Failure to do so results in the Court accepting as true all properly supported facts presented in the moving party's statement of material facts.

As Defendants have not responded, this Court assumes that the facts as claimed by the SFG and supported by admissible evidence are admitted to exist without controversy. This Court has reviewed SFG's statement of material facts and finds that, with few exceptions, they are adequately supported with appropriate citations to admissible evidence in the record. SFG's statement of material facts is approximately 4 pages in length, and this Court need not restate each and every fact that is deemed admitted in this Order. With the exception of the following brief summary of the facts, only those facts that are pivotal in resolving the instant motion are included in this Order.

In October of 2006, 1st Source Bank and defendant PAS entered into a contract entitled Loan and Security Agreement ("Loan Agreement"). (DE #1-2.) Under the terms of the Loan Agreement, 1st

Source Bank loaned over $924,000 to defendant PAS.[1] On that same day, a related Promissory Note was signed by PAS, and, in addition, defendant Steven J. Palazzola executed a related personal Guaranty of Payment. (DE's #1-3 & #1-4.) The Loan Agreement grants 1st Source Bank a "continuing security interest in the 'Collateral,'" which, when read in conjunction with the Promissory Note and a document entitled "Schedule 'A,'" is defined as a 1978 Cessna aircraft with serial number 501-0062. (DE's #1-2, p. 1 & #1-3, pp. 1-2.) The Loan Agreement provides, in part, that PAS will be in default if:

> (a) [PAS] fails to make any payment when due under this Agreement, any Note, any addendum, schedule or other separate document that, by it's terms, is made a part hereof, or under any other agreement between [PAS and 1st Source Bank];
>
> (b) [PAS] fails to make payment when due or otherwise fails to perform under any agreement for borrowed money, or any obligation of [PAS] for borrowed money is declared due and payable before its original maturity date;
>
> (c) [PAS] or any guarantor fails to perform any obligation under this Agreement or any guaranty . . . .

(DE #1-2, pp. 1-2.) The Loan Agreement further provides that after a default occurs, 1st Source Bank may:

> do *any or all* of the following, cumulatively:
>
> (i) declare all or any part of the remaining unpaid indebtedness of [PAS] to [1st Source Bank]

---

[1] The exact amount of $924,189.42 is incorporated by reference pursuant to the Promissory Note. Such Promissory Note states that it is "executed and delivered pursuant to the Loan and Security Agreement dated October 2, 2006 . . . . This Note memorializes a 'loan' as defined in and made under the Agreement." (See DE #1-2, p. 1; DE #1-3, p. 1.)

> to be immediately due and payable, together with all unpaid interest and any other accrued and unpaid monetary obligations of [PAS] hereunder;
>
> (ii) exercise all rights and remedies provided in this Agreement, under the Uniform Commercial Code as in effect in all pertinent jurisdictions and under any other applicable law, treaty, or convention, including without limitation the right (a) to immediate possession of all or a potion of the Collateral, (b) to require [PAS] to assemble the Collateral and deliver it to [1st Source Bank] . . ., (c) to enter upon any premises on which Collateral or any portion thereof may be located and take possession of the same, at any time or times, with or without demanding delivery, with or without judicial process, and with or without the assistance of others, (d) to dispose of Collateral on any premises, including those of [PAS], (e) to setoff any property of [PAS] in the possession or control of [1st Source Bank], and (f) in [1st Source Bank's] sole discretion, to undertake payment or other performance of any obligation of [PAS] hereunder that [PAS] has failed to perform.

(DE #1-2, p. 3) (emphasis added). The Loan Agreement states that it is PAS's obligation to:

> repay each Note and all other obligations of [PAS] hereunder independent of the obligation of any other individual or entity that has signed this Agreement or other documents as a Customer or a guarantor ("Signer(s)"). It is not necessary for [1st Source Bank] to exercise its rights and remedies in respect of the Collateral before collecting from Signer.

(*Id*.) The Promissory Note states that it is "secured by, and subject in all respects to, the terms and conditions contained in the Agreement . . . ." (DE #1-3, p. 1.) Finally, the personal Guaranty of Payment provides that:

3. [Steven J. Palazzola, as the] Guarantor unconditionally guarantees to [1st Source Bank] the full and prompt payment and performance when due of all Obligations due and to become due to [1st Source Bank]. [1st Source Bank] shall have the right to apply all amounts received hereunder, in such amount and in such proportions as [1st Source Bank] in its sole discretion shall determine, to the costs and expenses of enforcement and collection and to the full or partial satisfaction of the Obligation.

4. This is a guarantee of payment and not of collection. [1st Source Bank] shall have immediate recourse against [Steven J. Palazzola as] Guarantor and shall not be obligated to take any steps or otherwise attempt to enforce the Obligations by other available means prior to pursuing recourse against and obtaining payment from [Steven J. Palazzola as] Guarantor (although [1st Source Bank] may do so, in whole or in part, at its sole option).

5. [Steven J. Palazzola as] Guarantor's liability hereunder shall be absolute and unconditional, and nothing except final and full performance of all of the Obligations shall operate to discharge such liability. Accordingly,[Steven J. Palazzola as] Guarantor unconditionally and irrevocably waives each and every defense under applicable law that would otherwise operate to impair or diminish the liability of [Steven J. Palazzola as] Guarantor hereunder. . . . [Steven J. Palazzola as] Guarantor further unconditionally and irrevocably waives: (v) all rights [Steven J. Palazzola as] Guarantor may have, at law or in equity, to seek or claim subrogation, contribution, indemnification, or any other form of reimbursement from [PAS] by virtue of any payment(s) made to [1st Source Bank] under this Guaranty or otherwise until the Obligations shall have been fully and finally paid; (w) any acceptance of this Guaranty; (x) any set-offs or counterclaims against [1st Source Bank] which would impair or affect [1st Source Bank's] rights against [Steven J. Palazzola as] Guarantor; (y) any notice of the disposition of any collateral securing the Obligations and any right to object

> to the commercial reasonableness of the
> disposition of any such collateral; and (z) any
> defenses related to the validity or
> enforceability of any documentation executed by
> [PAS] or by [Steven J. Palazzola as] Guarantor in
> connection with the Obligations.

In their Answer, Defendants admit that defendant PAS failed to pay the amounts due under the Loan Agreement and related Promissory Note and that defendant Steven J. Palazzola failed to pay according to his personal Guaranty of Payment. (DE #9, pp. 5-6; Answer, ¶¶ 17, 23.) On July 2, 2009, 1st Source Bank sent a demand for payment to Defendants. (DE #1-6.) Later that month, 1st Source Bank assigned its security interest in the loan to SFG. (DE #1-7.)

Breach of Contract Claim

Even though all of the material facts in this case are undisputed, the Court must still analyze the SFG's claims to determine whether judgment is proper as a matter of law. See *Johnson v. Gudmundsson*, 35 F.3d 1104, 1112 (7th Cir. 1994). In nearly every one of their filings, Defendants admit that they have failed to pay amounts due as required by the Loan Agreement, Promissory Note and/or Personal Guaranty. These admissions, viewed in light of the contractual description of default cited above, make it clear that Defendants are in default. The Loan Agreement states that it is PAS's "obligation to repay each Note and all other obligations of [PAS] hereunder are independent of the obligation of any other individual or entity that has signed this Agreement or other documents as a

Customer or a guarantor." The personal Guarantee of Payment provides that defendant Steven J. Palazzola "unconditionally guarantees to [1st Source Bank] the full and prompt payment and performance when due of all Obligations due and to become due to [1st Source Bank]." That same personal Guarantee of Payment also states that defendant Steven J. Palazzola's liability is "absolute and unconditional." Although Defendants claim in their Response to Plaintiff's First Request for Admissions that they "can neither admit nor deny whether the failure to make payments [as required by the various documents] constitutes a 'breach'" (DE #15-2, pp. 1-2), the Court finds that, because Defendants' have not responded to the summary judgment motion or provided any evidence to suggest that SFG has failed to adequately perform or satisfy the conditions required for enforcement under the Loan Agreement, Promissory Note and/or Personal Guaranty, they have breached the contracts and are liable to SFG.

In its Motion for Summary Judgment, SFG seeks damages in the total of $786,002.66, plus interest at $121.10 from the date of the filing of the instant motion, until final disposition. To support the amount of damages requested, SFG offers the Affidavit of Richard Rozenboom, Vice President of 1st Source Bank and Vice President of SFG; Richard Rozenboom states that he has personal knowledge of the facts and matters found in the Affidavit and that he is competent to testify to the relevant facts. (DE #15-1, p. 1-2; Aff. of Rozenboom.) The damages requested include $777,093.86, which is comprised of:

$729,168.03 in unpaid principal loan amount; $41,295.46 in unpaid interest; $6,186.62 in unpaid late fees; and $443.75 in collection expenses.  SFG also requests $8,413.00 in attorneys fees and $495.80 in out of pocket legal expenses, as supported by the Affidavit of SFG's attorney, Patrick D. Murphy (DE #15-3, p. 1; Aff. Of Murphy.) SFG also requests the addition of interest at the rate of $121.10 per day from March 17, 2010 to final disposition.  Defendants have not filed a response to summary judgment or anything contesting the validity of these numbers.  Accordingly, judgment is entered in favor of the Plaintiff for the amount of $786,002.66 plus interest at $121.10 a day from March 17, 2010 to today.

CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Summary Judgment (DE #14) is **GRANTED**.  The Court **ORDERS** that judgment be entered in favor of plaintiff, SFG Commercial Aircraft Leasing, Inc., and against defendants, PAS Flight Systems, LLC, and Steven J. Palazzola, jointly and severally, in the amount of $786,002.66 plus interest at the daily rate of $121.10 from March 17, 2010, up to and including today.  The Clerk is further **ORDERED** to close this case.

**DATED: April 25, 2010**         /s/RUDY LOZANO, Judge
                                   **United States District Court**